23-6899-ag (L)
Aguilar-Villalobos v. Blanche

# United States Court of Appeals
## For the Second Circuit

August Term, 2025

(Submitted: June 10, 2026      Decided: July 8, 2026)

Docket Nos. 23-6899-ag (L); 24-616-ag (CON)
_____

WARDIS OMAR AGUILAR-VILLALOBOS,

*Petitioner*,

v.

TODD BLANCHE, ACTING UNITED STATES ATTORNEY GENERAL,

*Respondent*.
_____

Before:

LOHIER, *Chief Judge*, PARKER, and PÉREZ, *Circuit Judges*.

Petitioner Wardis Omar Aguilar-Villalobos is a native and citizen of El Salvador who applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT).  An Immigration Judge denied Aguilar-Villalobos's application and ordered his removal, having determined that his testimony was not credible and that the Salvadoran government was neither unable nor unwilling to protect him from harm.  The Board of Immigration Appeals ("BIA") affirmed the removal order, and Aguilar-Villalobos now seeks review in this Court.  We consider whether the agency's

credibility finding was supported by substantial evidence and whether the agency adequately justified its conclusion that Aguilar-Villalobos was not entitled to CAT relief as a former gang member who may be detained and tortured by the Salvadoran government.  We hold that while the agency's credibility determination was supported by substantial evidence, the agency failed to properly assess whether Aguilar-Villalobos's likely detention by the Salvadoran government would amount to torture.  We therefore GRANT the lead petition for review in part, and DENY it in part, VACATE the agency's denial of CAT relief, and REMAND to the BIA for further consideration.  We DISMISS as moot the consolidated petition, No. 24-616-ag.

Matthew K. Borowski, Borowski Witmer Immigration Lawyers, Buffalo, NY, *for Petitioner*.

Brian Boynton, Principal Deputy Assistant Attorney General, Civil Division, Stephen J. Flynn, Assistant Director, Robert Michael Stalzer, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC, *for Respondent*.

PER CURIAM:

Petitioner Wardis Omar Aguilar-Villalobos is a native and citizen of El Salvador who applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT).  In 2023 an Immigration Judge ("IJ") denied Aguilar-Villalobos's application and ordered his removal after determining that his testimony was not credible and that the Salvadoran government could and would protect him from harm.  The Board of Immigration

2

Appeals ("BIA") affirmed the removal order, and Aguilar-Villalobos now seeks review in this Court. His petition raises two distinct issues: First, whether the agency's credibility finding was supported by substantial evidence; and second, whether the agency adequately justified its conclusion that Aguilar-Villalobos was not entitled to CAT relief. We determine that the agency's credibility determination was supported by substantial evidence but that the agency failed properly to assess whether Aguilar-Villalobos's likely detention by the Salvadoran government would amount to torture entitling him to CAT relief. We therefore GRANT the lead petition for review in part, and DENY it in part, VACATE the agency's denial of CAT relief, and REMAND to the BIA for further consideration. We DISMISS as moot the consolidated petition, No. 24-616-ag.

I

In August 2012 Aguilar-Villalobos, then 21-years-old, was detained by Customs and Border Patrol ("CBP") agents at the Texas border while attempting to enter the United States unlawfully. In an interview with CBP, Aguilar-Villalobos told agents that he feared that if he returned to El Salvador, gang members would harm him because of his tattoos. Aguilar-Villalobos was released on bond after an asylum officer found that he had a credible fear of

3

returning to El Salvador. Shortly thereafter the Department of Homeland Security ("DHS") initiated removal proceedings, charging Aguilar-Villalobos as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I).

Aguilar-Villalobos first appeared in Immigration Court in February 2014. He conceded removability and applied for asylum and withholding of removal by submitting a Form I-589. Over the next few years, Aguilar-Villalobos's immigration case stalled, but he married his wife, a United States citizen, had a child, and unfortunately fell back in with his former gang. In 2018 he was arrested and jailed for his suspected role in an unlawful conspiracy to possess and sell a firearm. In May 2022 Aguilar-Villalobos pleaded guilty to criminal possession of a loaded firearm in violation of New York Penal Law § 265.03(3), was sentenced to time-served, and then transferred to DHS custody.

During his removal hearings, Aguilar-Villalobos testified that he first came to the United States as a teenager and attended high school in Los Angeles but dropped out in the eleventh grade. In 2011 he witnessed gang members commit a crime. They then forced him to join the gang and tattooed him "against [his] will" because, among other things, he "already knew too much." Cert. Admin. R. 305–06. The gang later "mark[ed him] to death" owing to his subsequent role

4

in and response to the 2011 incident. Cert. Admin. R. 308–09. He fled to El Salvador for around five months but returned to the United States after receiving threatening phone calls. After coming back to the United States, he rejoined the gang to protect his family.

Aguilar-Villalobos expressed a fear that if he returned to El Salvador, the gang would target and kill him or the government of El Salvador would imprison and torture him because of his gang tattoos and prior gang affiliation. The IJ denied relief, concluding that Aguilar-Villalobos was not credible because of "contradictions between his testimony and other statements of record." Cert. Admin. R. 77. The IJ pointed to inconsistencies in Aguilar-Villalobos's testimony compared with a police report, a pre-sentence report, his credible fear interview, and his 2012 interview at the border. The IJ also determined that Aguilar-Villalobos's New York firearms offense was particularly serious and thus barred asylum and withholding of removal. In addition, the IJ concluded, Aguilar-Villalobos failed to establish a nexus to a political opinion or cognizable social group and failed to allege past harm that rose to the level of persecution. The IJ determined that Aguilar-Villalobos was not eligible for CAT relief given the

evidence that he would receive due process and that conditions in El Salvador's prisons reflected a lack of resources and training.

The BIA affirmed in August 2023. It concluded that the IJ did not clearly err in reaching its adverse credibility determination, which was supported by multiple inconsistencies, or in its conclusion that Aguilar-Villalobos failed to corroborate his role in the 2011 incident. The BIA also affirmed the IJ's denial of CAT relief, explaining that "El Salvador may detain the respondent to investigate his gang affiliation" but that "suspected gang members are allowed to appear before judges" and "those wrongfully detained have been released." Cert. Admin. R. 5.

In December 2023 Aguilar-Villalobos moved to reopen his proceedings on the basis that conditions in El Salvador had worsened. The BIA denied the motion in February 2024, finding Aguilar-Villalobos had merely supplied evidence of a continuation of prior abuses, not new abuses.

Aguilar-Villalobos filed petitions for review of both the order of removal and the order denying reopening. We consolidated the petitions in March 2024.

II

"[W]e review the IJ's decision as modified by the BIA and do not address the findings the BIA declined to reach or found abandoned." *Castellanos-Ventura v. Garland*, 118 F.4th 250, 253 (2d Cir. 2024). "We review all questions of law, including the application of law to facts, *de novo*" but "we apply the deferential substantial evidence standard of review to the agency's factual findings," including its adverse credibility determination. *Ojo v. Garland*, 25 F.4th 152, 159 (2d Cir. 2022).

A

To start, Aguilar-Villalobos challenges the agency's adverse credibility determination. "Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, [and] the consistency of such statements with other evidence of record . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C.

7

§ 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008).

Substantial evidence supports the agency's adverse credibility determination. In finding that Aguilar-Villalobos's fear of persecution and torture by a gang was not credible, the agency reasonably relied on several inconsistencies in the administrative record, including why he temporarily returned to El Salvador, and what he witnessed in relation to the 2011 incident. Aguilar-Villalobos responds that the agency should not have relied on a presentence report and a police report because, he says, these materials are not "reliable evidence." Pet. Br. 17. It is not enough simply to call these materials unreliable without further explanation. Regardless, "we can state with confidence that the same decision would be made on remand" because the agency premised its adverse credibility finding on material discrepancies between Aguilar-Villalobos's oral testimony and certain other sworn statements he made. *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 339 (2d Cir. 2006). Under these circumstances, in which "a reasonable fact-finder [could] find that

8

[Aguilar-Villalobos] was not credible, we must affirm the IJ's adverse credibility determination." *Xiu Xia Lin*, 534 F.3d at 167.

Aguilar-Villalobos's claims for asylum, withholding of removal, and protection under the CAT are foreclosed insofar as they are based on "the same factual predicate" underlying the agency's adverse credibility finding. *See Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018).

B

We consider Aguilar-Villalobos's CAT claim insofar as it "did not depend exclusively on a factual predicate that [he] had failed to establish." *Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 523 (2d Cir. 2005). Aguilar-Villalobos separately asserted to the agency that he is eligible for CAT relief because he will likely be detained and tortured at the hands of the Salvadoran government. *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); *Khouzam v. Ashcroft*, 361 F.3d 161, 170–71 (2d Cir. 2004).[1] Relying on reports and news articles documenting El Salvador's "state of

---

[1] The Government argues that Aguilar-Villalobos failed to exhaust or otherwise abandoned his arguments entitling him to CAT relief. We need not reach the issue of exhaustion because it pertains only to Aguilar-Villalobos's argument that the BIA issued an inconsistent decision in a case involving another gang member, which we do not address. Aguilar-Villalobos did not abandon his claim of likely torture based on poor prison conditions based on record evidence of the government of El Salvador's specific intent to torture. Pet. Br. 21–22 (citation modified).

9

exception"[2] in which suspected gang members face dire prison conditions and the routine suspension of due process, he asserted a fear of being tortured while imprisoned.

To be eligible for CAT relief, an applicant must show that he would "more likely than not" be tortured by or with the acquiescence of government officials. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). "Barbaric prison conditions might constitute torture if they cause severe pain or suffering and if circumstances indicate that the intent of the authorities in causing the severity of pain and suffering . . . is to illicitly discriminate, punish, coerce confessions, intimidate, or the like." *Pierre v. Gonzales*, 502 F.3d 109, 121 (2d Cir. 2007). Here, the BIA affirmed the IJ's finding that Aguilar-Villalobos "likely could be detained" by the Salvadoran government. Cert. Admin. R. 89. Nevertheless, the BIA denied his request for CAT relief, "discern[ing] no clear error in the [IJ's] factual finding that suspected gang members are allowed to appear before judges in El Salvador and those wrongfully detained have been released." Cert. Admin. R. 5.

The BIA's conclusion lacks sufficient justification for two reasons.

---

[2] The "state of exception," is a legal framework invoked by the government of El Salvador in March 2022 to temporarily suspend constitutional rights and enable mass arrests in response to gang violence. *See* Cert. Admin. R. 823; *Villalta Martinez v. Bondi*, 157 F.4th 108, 111 n.4 (2d Cir. 2025).

10

First, the agency did not adequately consider the likelihood that Aguilar-Villalobos would be subjected to dire prison conditions and whether these conditions rise to the level of torture. There is some record support for Aguilar-Villalobos's claim that El Salvador subjects suspected gang members to human rights abuses, including prolonged detention and barbaric prison conditions. *See, e.g.,* Cert. Admin. R. 790–92 (2022 The Guardian Article) (noting that the government has been "suspending constitutional rights including the presumption of innocence"); Cert. Admin. R. 845–46 (2022 Crisis Grp. Report) (describing how the government "doubled the size of the prison population in the span of a few months" resulting in reports of "ill treatment, torture[,] and inmate deaths"); Cert. Admin. R. 672–74 (2022 NBC News Article) (describing "horrific conditions" inside prisons where "deaths stem from unattended injuries sustained in beatings during their capture, chronic illnesses for which prisoners do not receive treatment, [and] deplorable sanitary conditions").

Second, the agency failed to consider whether the conditions in El Salvadoran prisons were *intentionally* created and maintained or merely a result of a lack of government resources. "The failure to maintain standards of diet, hygiene, and living space in prison does not constitute torture under the CAT

11

unless the deficits are sufficiently extreme and are inflicted by government actors (or by others with government acquiescence) *intentionally* rather than as a result of poverty, neglect, or incompetence." *Pierre*, 502 F.3d at 111 (emphasis in original). The agency did not analyze the intent or acquiescence of the government of El Salvador on this issue, even though Aguilar-Villalobos adduced evidence that the government intends to subject suspected gang members to these conditions. *See, e.g.*, Cert. Admin. R. 671–72 (2022 NBC News Article) (noting that President Bukele "tweeted the daily number of 'terrorists' detained and talked tough about making their lives miserable"); Cert. Admin. R. 675–77 (2022 Amnesty Int'l Article) (noting that "the current government has seized control of the judiciary, enabling it to carry out its strategy of arbitrary arrests and mass illegal incarceration unencumbered by checks or balances").

We therefore remand for the BIA to consider in the first instance whether these prison conditions amount to torture and whether government officials' statements about harsh prison conditions and other evidence establishes that the conditions were intentionally created and maintained by the government.

III

For the foregoing reasons, the lead petition for review is GRANTED in part and DENIED in part, the agency's denial of CAT relief is VACATED, and the lead petition is REMANDED to the BIA for further proceedings. The consolidated petition, No. 24-616-ag, is DISMISSED as moot.

13